# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| CARL ANTHONY MCARTHUR, SR., | |
| Plaintiff, | No. 18-CV-131 CJW-MAR |
| vs. | **ORDER** |
| PETE WILSON, MATT SANDVIEK, and KENT STEENBLOCK, | |
| Defendants. | |

This matter is before the Court on a motion for summary judgment filed by defendants Pete Wilson ("Major Wilson"), Matt Sandvick ("Lt. Sandvick"),[1] and Kent Steenblock ("Lt. Steenblock"). (Doc. 22). Although plaintiff requested and received an extension of time to respond (Docs. 23 & 26), plaintiff did not timely file a resistance. For the following reasons, defendants' motion for summary judgment is **granted**.

## I. FACTUAL BACKGROUND

Plaintiff was incarcerated at the Linn County Correctional Center from October 3, 2018, to January 14, 2019. (Doc. 22-3, at 5, 8, 45). Plaintiff is a member of the Seventh Day Adventist Church and, per his religious beliefs, does not eat pork. (Doc 1-1, at 4). Upon his incarceration, plaintiff originally requested a no-pork diet and then switched to a full vegetarian diet. (Docs. 22-1, at 7; 22-3, at 29, 49, 51). Despite his diet, plaintiff alleges defendants continued to serve him pork or some other meat. (Doc. 1-1, at 4). Plaintiff also claims defendants improperly seized his Bible for a period of time. (*Id.*).

---

[1] Defendants note that Matt Sandveik is correctly spelled Matt Sandvick. (Doc. 22-1, at 1–2).

Plaintiff argues these incidents violated his First Amendment right to free exercise of his religion. (*Id.*).

As a result of these two grievances, plaintiff brings this action under Title 42, United States Code, Section 1983 against defendants. Plaintiff's grievances were directly resolved by Lt. Sandvick and Lt. Steenblock. (Doc. 22-2, at 1). Defendants state, and the record shows in part, that plaintiff did not appeal the resolution of any of his grievances. (Doc. 22-3, at 5, 9, 44). If plaintiff had appealed, his appeals would have been resolved by Major Wilson. *(Id.)*.

The following facts constitute plaintiff's diet-related claim. On November 9, 2018, plaintiff alleges he was served pork despite his no-pork accommodation, was assured by a deputy that it was not pork, ate it, and later learned that it was in fact pork. (Doc 1-1, at 4, 6). On November 16, 2018, plaintiff filed a grievance about this incident, and the grievance was resolved as unfounded because plaintiff allegedly did not turn in his commissary order on time. (*Id.*, at 6). On November 29, 2018, plaintiff alleges that he was served a second pork tray. (*Id.*, at 4). Plaintiff claims he filed a second grievance about this incident (*Id.*), but this grievance is not in the record. On December 1, 2018, plaintiff filed a grievance requesting a vegetarian diet due to his religious beliefs. (*Id.*, at 4, 7). Defendants granted plaintiff's request. (*Id.*, at 7). On December 2, 2018, plaintiff filed a grievance claiming he was served a third meat tray. (*Id.*, at 4, 8). The grievance was resolved, ensuring plaintiff that he would be placed on a vegetarian diet. (*Id.*, at 8). On December 11, 2018, plaintiff filed another grievance apparently about the same meat trays he previously received. (*Id.*, at 9). The grievance was resolved, finding that plaintiff was served a vegetarian meal. (*Id.*). On December 19, 2018, plaintiff filed another grievance alleging he received a fourth meat tray. (*Id.*, at 13). The grievance was resolved, finding that plaintiff was served a vegan meal. (*Id.*). On December 21, 2018, plaintiff filed another grievance alleging he received a fifth meat tray. (*Id.*, at 15).

The grievance was resolved, finding that plaintiff initially received the tray in error and a substitute was quickly given to him. (*Id.*).[2]

The following facts constitute plaintiff's Bible-related claim. On December 17, 2018, plaintiff placed a wetted strip of paper over the camera monitoring his cell. (Doc. 22-3, at 37, 41).[3] While the camera was covered, the light went out in plaintiff's cell. (*Id.*, at 37). The light was later found to have been tampered with by having its wires torn out. (*Id.*). As a result, all of plaintiff's possessions aside from his blanket, including his Bible, were temporarily removed from his cell. (*Id.*). Plaintiff admitted that he covered the camera but denied that he tampered with the light. (*Id.*, at 41). Plaintiff's behavior was found to be in violation of 00.15 Tampering with, or Blocking Any Locking Device, Door or Window, Vent or Camera. (*Id.*, at 38, 41). Defendants state that plaintiff's Bible was returned to him after safety measures were taken and plaintiff assured that he would cease his allegedly violative behavior. (Doc. 22-1, at 11).

## II. APPLICABLE LAW

### A. *Summary Judgment*

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When asserting that a fact is undisputed or is genuinely

---

[2] Defendants' statement of undisputed facts only discusses this fifth and final grievance. (Doc. 22-2, at 1). Given plaintiff's lack of response, it is not clear to what extent the first four meal incidents are disputed. Although the Court would be within its discretion to consider plaintiff's claim waived as to the first four incidents, it will consider all five incidents in light of the evidence in the record.

[3] Many of these facts are taken from defendants' statement of undisputed facts (Doc. 22-2) and their supporting appendix. (Doc. 22-3). Plaintiff did not respond to or otherwise dispute these facts. "[A] failure to respond to an individual statement of material fact, with appropriate appendix citations, may constitute an admission of that fact." *See* LR 56(b); *see also* FED. R. CIV. P. 56(e). Thus, the Court considers these facts as admitted and undisputed.

3

disputed, a party must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Alternatively, a party may "show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). More specifically, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2).

A fact is "material" if it "might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). "An issue of material fact is genuine if it has a real basis in the record," *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citation omitted), or "when a reasonable jury could return a verdict for the nonmoving party on the question," *Wood v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (internal quotation marks and citation omitted). Evidence that presents only "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249–50, does not make an issue of fact genuine. In sum, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" that it "require[s] a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.*, at 249 (citation and internal quotation marks omitted).

The party moving for summary judgment bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citation omitted). Once the moving party has met this burden, the nonmoving party must go

4

beyond the pleadings, and by depositions, affidavits, or other evidence designate specific facts showing that there is a genuine issue for trial. *See Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005).

In determining whether a genuine issue of material fact exists, courts must view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences that can be drawn from the facts. *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014); *Matsushita*, 475 U.S. at 587–88 (citation omitted); *see also Reed v. City of St. Charles*, 561 F.3d 788, 790 (8th Cir. 2009) (stating that in ruling on a motion for summary judgment, a court must view the facts "in a light most favorable to the non-moving party—as long as those facts are not so 'blatantly contradicted by the record . . . that no reasonable jury could believe' them") (alteration in original) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). A court does "not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004) (citation omitted). Rather, a "court's function is to determine whether a dispute about a material fact is genuine[.]" *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376–77 (8th Cir. 1996).

### B. *Qualified Immunity*

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citations and internal quotation marks omitted). Qualified immunity is "an immunity from suit rather than a mere defense to liability [and] it is effectively lost if a case is erroneously permitted to go to trial." *Id.* at 231 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). "[Q]ualified immunity protects officials who make bad guesses in gray areas." *Estate of Walker v. Wallace*, 881 F.3d 1056, 1060 (8th Cir. 2018).

When a motion for summary judgment rests on a claim of qualified immunity, courts examine two prongs to resolve the claim: (1) the court must decide if the facts established by the record make out a violation of a constitutional right, and (2) "the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232. Courts have discretion as to which of the two prongs to apply first. *Id.* at 236. In assessing qualified immunity at the motion for summary judgment stage, the court determines the material facts under the Rule 56 standard, but "[o]nce the predicate facts are established, the reasonableness of the official's conduct under the circumstances is a question of law." *Tlamka v. Serrell*, 244 F.3d 628, 632 (8th Cir. 2001). "On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A plaintiff bears the burden of showing that the law was clearly established. *Estate of Walker*, 881 F.3d at 1060.

For the law to be clearly established, "existing law must have placed the constitutionality of the officer's conduct beyond debate. This demanding standard protects all but the plainly incompetent or those who knowingly violate the law." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (internal citations and quotation marks omitted). Further, "precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that every reasonable official would know." *Id.* at 590 (internal quotation marks and citations omitted). A right is clearly established by controlling authority, or, absent that, a "robust consensus of cases of persuasive authority," which puts an officer on notice that his conduct is unlawful. *De La Rosa v. White*, 852 F.3d 740, 745 (8th Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). Like liability under

6

Section 1983, qualified immunity is personal, so the court assesses each individual's conduct independently. *Marsh v. Phelps Cty.*, 902 F.3d 745, 754 (8th Cir. 2018).

### III. ANALYSIS

The Court will address the following issues: (1) whether plaintiff has exhausted administrative remedies as required; (2) whether plaintiff's complaint sufficiently identifies unconstitutional actions taken by defendants here; (3) the merits of plaintiff's grievances; and (4) whether defendants are entitled to qualified immunity.

#### A. *Exhaustion of Administrative Remedies*

Defendants argue that summary judgment is appropriate because plaintiff, by not appealing the resolution of his grievances, did not exhaust administrative remedies. (Doc. 22-1, at 9).

An inmate cannot bring a claim under Section 1983 or any other federal law against a prison or prison official until the inmate exhausts all administrative remedies within the prison. 42 U.S.C. § 1997e(a). A court cannot excuse an inmate's failure to exhaust administrative remedies. *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). If a claim has not been exhausted, the Prison Litigation Reform Act requires immediate dismissal. *Brakeall v. Stanwick-Klemik*, No. 4:17-CV-04101-LLP, 2020 WL 1180727, at *5 (D.S.D. Mar. 11, 2020) (citation omitted). There are only three recognized exceptions to the exhaustion requirement: (1) when the administrative process is merely a dead end with prison officials unable or unwilling to actually provide relief; (2) when the administrative process is so opaque that it becomes unusable; and (3) when prison officials prevent an inmate from fully using the administrative process through some bad faith conduct. *Id.*

The mandatory exhaustion requirement for inmates applies here. Plaintiff failed to appeal his grievances as required by the jail handbook. *See* (Doc. 22-3, at 25). Plaintiff's failure does not fall under any of the three exceptions: there is no evidence in

the record that that prison officials were unable or unwilling to provide him relief, the grievance process does not appear to be confusingly opaque, and there is no evidence that the prison officials conducted themselves in bad faith so as to deprive plaintiff in some way of using the grievance procedures. Rather, the record shows that plaintiff's requests were quickly addressed, he was given a handbook on how to navigate the grievance process (Doc. 22-3, at 21–25), and he was continually allowed to submit multiple grievances.

Thus, due to plaintiff's failure to exhaust administrative remedies on all his claims, the Court **grants** defendants' motion for summary judgment. In the alternative, however, the Court will address whether plaintiff sufficiently identified unconstitutional actions by defendants, the merits of plaintiff's claims, and qualified immunity.

### *B.     Identification of Defendants*

As a preliminary matter, defendants argue plaintiff has failed to allege specific acts by each defendant which violated his right to free exercise of his religion. (Doc. 22-1, at 8).

"Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (citations omitted). "To establish personal liability of . . . defendants, [a plaintiff] must allege specific facts of [a defendant's] personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Id.* (citation omitted). If a plaintiff "cannot establish personal involvement of the . . . defendants, [the defendants] are entitled to judgment as a matter of law under section 1983." *Id.*

The Court agrees with defendants that plaintiff has failed to allege specific facts of defendants' personal involvement or direct responsibility for the alleged deprivation of plaintiff's constitutional right. The record supports defendants' argument that, because plaintiff did not appeal the resolution of his grievances, Major Wilson has no connection
8

the record that that prison officials were unable or unwilling to provide him relief, the grievance process does not appear to be confusingly opaque, and there is no evidence that the prison officials conducted themselves in bad faith so as to deprive plaintiff in some way of using the grievance procedures. Rather, the record shows that plaintiff's requests were quickly addressed, he was given a handbook on how to navigate the grievance process (Doc. 22-3, at 21–25), and he was continually allowed to submit multiple grievances.

Thus, due to plaintiff's failure to exhaust administrative remedies on all his claims, the Court **grants** defendants' motion for summary judgment. In the alternative, however, the Court will address whether plaintiff sufficiently identified unconstitutional actions by defendants, the merits of plaintiff's claims, and qualified immunity.

### *B.     Identification of Defendants*

As a preliminary matter, defendants argue plaintiff has failed to allege specific acts by each defendant which violated his right to free exercise of his religion. (Doc. 22-1, at 8).

"Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (citations omitted). "To establish personal liability of . . . defendants, [a plaintiff] must allege specific facts of [a defendant's] personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Id.* (citation omitted). If a plaintiff "cannot establish personal involvement of the . . . defendants, [the defendants] are entitled to judgment as a matter of law under section 1983." *Id.*

The Court agrees with defendants that plaintiff has failed to allege specific facts of defendants' personal involvement or direct responsibility for the alleged deprivation of plaintiff's constitutional right. The record supports defendants' argument that, because plaintiff did not appeal the resolution of his grievances, Major Wilson has no connection

to the incidents in question. (Doc. 22-3, at 12). Also, the record does not support Lt. Sandvick or Lt. Steenblock's personal involvement or direct responsibility for plaintiff's deprivation allegations. At most, these two defendants resolved plaintiff's grievances. (Doc. 22-3, at 5, 8–9). There is no evidence in the record to support that they had a personal role in giving plaintiff the wrong food trays or seizing his Bible. Rather, unidentified and unnamed kitchen staff served plaintiff his food. (Doc. 22-3, at 5, 8, 12). Also, a prison official not named as a defendant here filed the report concerning the seizure of plaintiff's Bible. (Doc. 22-3, at 37). As to Lt. Sandvick and Lt. Steenblock, however, the record shows they merely addressed the grievances filed and took corrective action. *See, e.g.*, (*Id.*, at 52).

Thus, because the record is bare as for how each defendant specifically deprived plaintiff of his constitutional rights and there is no causal link to support plaintiff's claims under Section 1983, the Court also **grants** defendants' motion for summary judgment on this basis. The Court will, however, analyze the merits of plaintiff's claims and qualified immunity in the alternative.

### C. *Violation of Plaintiff's Right to Free Exercise of Religion*

"Section 1983 provides a remedy against any person who, under color of state law, deprives another of rights protected by the Constitution." *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992) (internal quotation marks omitted). To constitute state action, the deprivation of a right must be caused by someone fairly regarded as a state actor. *West v. Atkins*, 487 U.S. 42, 49 (1988) (citation omitted) (alteration in original). Merely being employed by the State does not make an individual a state actor. *Id.* "It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State." *Id.*, at 49–50.

9

### 1. Diet-Related Grievances

Defendants argue that summary judgment is appropriate because plaintiff failed to state a claim for violation of his constitutional religious rights. (Doc. 22-1, at 6).

"[T]he threshold question for any prisoner First Amendment free-exercise claim is whether prison officials have substantially burdened the plaintiff's sincerely held religious beliefs." *Goulding v. Kaemingk*, No. 4:14-CV-04151-KES, 2016 WL 6271425, at *10 (D.S.D. Sept. 23, 2016), *adopted*, No. 4:14-CV-04151-KES, 2016 WL 6269587 (D.S.D. Oct. 25, 2016) (citation omitted). Summary judgment is appropriate if the plaintiff "has not put forth sufficient evidence that a reasonable jury could conclude that his ability to practice his religion has been substantially burdened." *See Patel v. U.S. BOP*, 515 F.3d 807, 813–14 (8th Cir. 2008).

Although "prison inmates are entitled to reasonable accommodation of their religious dietary needs," *Love v. Reed*, 216 F.3d 682, 689 (8th Cir. 2000) (citation omitted), "there is extensive (but not total) agreement that an isolated, intermittent, or otherwise de minimis denial or interruption of an inmate's religiously required diet does not substantially burden his religious belief," *Mbonyunkiza v. Beasley*, 956 F.3d 1048, 1054 (8th Cir. 2020) (citations omitted). A negligent act that causes "unintended loss of or injury to life, liberty or property" does not rise to the level of violating a constitutional right. *See Mbonyunkiza*, 956 F.3d at 1054 (citing *Daniels v. Williams*, 474 U.S. 327, 328 (1986)). "[E]vidence of pervasive 'mistakes' could support a claim that [the prison] ha[s] a de facto policy of ignoring or deviating from its free-exercise-compliant policies[.]" *Id.*, at 1055. "[A]bsent evidence that an underlying prison regulation or policy violates the Free Exercise Clause, evidence that a correction official negligently failed to comply with an inmate's sincerely held religious dietary beliefs does not establish a Free Exercise Clause claim under § 1983." *Id.*

There is a genuine issue of fact as to how many times plaintiff was served meat. As discussed, plaintiff filed grievances discussing at least five occasions when he was served meat. On all but one of those occasions, however, the resolution found that plaintiff had either not yet turned in his dietary preference or was given a vegetarian or vegan meal. Consistent with the record, in their statement of undisputed facts, defendants only recognize one incident when plaintiff was given the wrong meal and it was quickly corrected. (Doc. 22-2, at 1–2). In sum, plaintiff has not produced any evidence beyond his grievances themselves that he was given the wrong meal on more than one occasion.

Viewing the record in the light most favorable to plaintiff, however, even if plaintiff was served meat five separate times in a two-month period after requesting a no-pork diet or vegetarian diet, the Court finds plaintiff still has not stated a violation of his constitutional right to freedom of religion. The Eighth Circuit has held that there must be a substantial burden on plaintiff's right to exercise his religion due to a government policy or action to qualify as a violation. Plaintiff never asserts that any of the five incidents occurred under some discriminatory policy. Instead, plaintiff challenges the implementation of said policies. *See Mbonyunkiza*, 956 F.3d at 1054 (holding there was no Section 1983 claim in part because plaintiff was not challenging any of the prison's policies but rather the prison officials' failure to properly implement said policies).

Plaintiff's repeated receipt of meat, even if it occurred, does not indicate that defendants had a de facto policy of deviating from or ignoring the prison's food accommodation policy. Instead, the record shows defendants documented plaintiff's vegetarian preference after he requested it, addressed plaintiff's grievances, and corrected mistakes when they were timely reported. Mistakes, even negligent ones, do not rise to the level of a constitutional violation of the right to freedom of religion. In sum, the evidence in the record shows the Linn County Correctional Center has a policy of

11

approving religious dietary requests and, even if such requests are inadvertently not honored at times, correcting mistakes when they occur. *See, e.g.*, (Doc. 22-3, 19–33).

Thus, the Court finds that plaintiff's Section 1983 claim fails on the merits as it relates to his diet-related grievances.

### 2. *Bible-Related Grievances*

Defendants assert that the removal of plaintiff's Bible from his cell was to further penological goals. Specifically, they assert that the measure was necessary for staff and inmate safety. (Doc. 22-1, at 11).

"Prison regulations may [properly] infringe upon prisoners' constitutional rights so long as such regulations are reasonably related to legitimate penological interests." *Goff v. Graves*, 362 F.3d 543, 549 (8th Cir. 2004) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). For this analysis, courts must evaluate the following four factors: (1) whether the regulation has a valid and rational connection to a legitimate governmental interest; (2) whether inmates have alternative means of exercising their asserted right; (3) what effect accommodating the right would have on guards, other inmates, and prison resources; and (4) whether there are available alternatives to the regulation. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (citing *Turner*, 482 U.S. at 89–91).

In conducting a *Turner* analysis, "[the Court] must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Id.* "We have recognized institutional security as 'the most compelling governmental interest in a prison setting.'" *Goff*, 362 F.3d at 549 (quoting *Ochs v. Thalacker*, 90 F.3d 293, 296 (8th Cir. 1996)). "The burden, moreover, is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." *Overton*, 539 U.S. at 132.

First, the Court agrees with defendants that covering up a security camera creates a very dangerous security concern, which is the government's most compelling interest in a prison setting. Thus, temporarily removing paper products such as the Bible from plaintiff's cell so that he could not continue to cover up the security camera has a valid and rational connection to the government's legitimate security interest. *See Overton*, 539 U.S. at 133 ("The regulations promote internal security, perhaps the most legitimate of penological goals.").

Second, plaintiff has not alleged a lack of alternative means to exercising his religious rights once his Bible was taken away and defendants assert that no other actions were taken to limit plaintiff's religious rights. Thus, it does not appear anything otherwise hindered plaintiff from practicing his religion during the temporary seizure of his Bible.

Third, admittedly, there is nothing in the record about the impact of accommodating plaintiff's asserted right. The Court generally agrees with defendants, however, that allowing plaintiff to possess paper products in his cell after he covered up his security camera with paper "would impair the ability of corrections officers to protect all who are inside [the] prison's walls." *See Overton*, 539 U.S. at 135.

Last, plaintiff has not pointed to any regulatory alternative that undermines the regulation's reasonableness. *See id.*, at 136 ("*Turner* does not impose a least-restrictive-alternative test, but asks instead whether the prisoner has pointed to some obvious regulatory alternative that fully accommodates the asserted right while not imposing more than a de minimis cost to the valid penological goal."). Indeed, no alternative other than temporarily removing paper products and other possessions from plaintiff's cell is apparent on this record.

Thus, even in the light most favorable to plaintiff, he has failed to show the prison's regulatory measure was not a reasonable penological measure. Thus, the Court

13

finds that plaintiff's Section 1983 claim fails on the merits as it relates to his Bible-related grievances.

As a result, the Court finds that plaintiff has not sufficiently stated his Section 1983 claim as to either of his grievances and thus **grants** summary judgment on the merits. Indeed, even in the light most favorable to plaintiff, no reasonable jury could conclude either that defendants' alleged serving of meat to plaintiff on five occasions constituted de facto ignorance of their food accommodation policy or that their temporary seizure of plaintiff's Bible was anything more than a reasonable penological measure. In the alternative, however, the Court will also address qualified immunity.

### D. *Qualified Immunity*

As discussed, the Court has already found that plaintiff has failed to state a violation of his constitutional rights as to both his diet and Bible-related grievances. Thus, plaintiff's claims fail the first prong of qualified immunity.

Even if there was evidence to show that a constitutional right had been violated, the second prong of qualified immunity is not satisfied because there is no clearly established law to show the unconstitutionality of defendants' actions. Plaintiff did not point to any cases that show that there was a right violated here that officers should have known about. Plaintiff's failure, however, is mitigated due to his limited access to legal resources while incarcerated. This Court, also, is not aware of any authority holding that a constitutional violation is present when a prison official negligently provides the wrong meal on a handful of occasions or temporarily seizes a religious text for security measures. Thus, without any such authority, the Court finds that plaintiff has failed to satisfy the second prong of the test as well.

Thus, the Court also **grants** summary judgment on plaintiff's claims because defendants are entitled to qualified immunity.

14

Case 1:18-cv-00131-CJW-MAR   Document 27   Filed 10/20/20   Page 14 of 15

## IV.    CONCLUSION

For these reasons, defendants' Motion for Summary Judgment (Doc. 22) is **granted**. The Clerk's Office is **directed** to enter judgment in favor of Pete Wilson, Matt Sandvick, and Kent Steenblock on plaintiff's claims. This case is **dismissed with prejudice**.

**IT IS SO ORDERED** this 20th day of October, 2020.

_____
C.J. Williams
United States District Judge
Northern District of Iowa